No. 103.—JAMES HARRELL, administrator, &c. plaintiff in error, *vs.* JAMES W. and JOHN M. GREEN, defendants in error.

[1.] A testatrix disposes, by will, of what appears to be all of her property, consisting mostly of land and negroes. Among the negroes there are three females, of whom two are child-bearing women, and the other a girl thirteen years old. Of these three she gives one of the women to A and one to B, and the child she gives to C. In a few months she makes a codicil, in which she gives to A and B respectively, the future issue of the two women: The testatrix is an old and infirm person, but she lives three years after the making of the codicil; and a few months before her death, one of the three females, who was a child at the time of the making of the will and codicil, has issue: *Held*, that this issue goes with the mother to C. But see the opinion.

Trover, in Upson Superior Court. Tried before Judge STARKE, May Term, 1855.

This was an action of trover brought by James Harrell, administrator of the undevised estate of Mrs. Barbary Harrell, deceased, against the defendants in error, for the recovery of a negro slave Gabriel.

On the trial, it appeared in evidence that Mrs. Harrall executed her will on the 1st day of January, 1833. By the 1st item of said will she "bequeathed to hes daughter, Maria Thomas and her children, a negro woman named Het, about twenty-one years of age, and her child, Anthony, nine months of age."

By the 2d item, she "gave to Andrew J. and John Harrell a negro woman named Hulda, about sixteen years of age, and her child, Virgin."

By another item of said will "she gave to Hardy H. Avon, a negro girl, Matilda, about thirteen years of age, which said girl she wished to remain under the control of James Harrell, as guardian for the property of the said Hardy H. Avon,'" &c.

On the 6th day of April, 1833, Mrs. Barbary Harrell executed a codicil to her will, as follows:

"It is my will that the future increase of the negro woman, Het, named in the first item of my will, shall belong to and go to Maria Thomas, my daughter, and her children, and that the future increase of the negro woman, Hulda, named in the 2d item of my will, shall belong and go to Andrew J. and John Harrell."

The Court, amongst other things, charged the Jury, "that the slave Gabriel, the subject-matter of the suit, (admitting him, as plaintiff did, to have been the child of Matilda, born after the making of the will and previous to the death of the testatrix, and born a few months before her death,) on the arrival of Hardy H. Avon to the age of twenty-one years, on proof of the assent of the executor to the legacy, passed under the will, with his mother, Matilda, and vested, absolutely, in the said Hardy H. Avon; that the testatrix could not be considered as having died intestate as to Gabriel, on account of his birth after the execution of the will and codicil, and previous to the death of the testatrix; and hence, the *administrator cæterorum* took no right to the slave Gabriel, and was not entitled to recover him as such administrator."

To which charge of the Court Counsel for plaintiff excepted.

O. C. GIBSON, for plaintiff in error.

GREENE, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

The will in this case was in the following words: "Georgia, Upson County: In the name of God, amen! I, Barbary Harrell, of the County and State aforesaid, do make and ordain this my last will and testament. I recommend my soul to Almighty God. As to my worldly substance, I dispose of the same as follows:

Harrell, adm'r, &c. vs. Green.

"Item: I give and bequeath to my daughter, Maria Tho-, mas, and her children, Henry Harrell, William Harrell, Nancy Thomas and Lucinda Thomas, a negro woman, named Het, about twenty-one years old, and her child Anthony, nine months of age.

"Item: I give to Andrew J. Harrell and John Harrell a negro woman named Hulda, about sixteen years of age, and her child Virgin.

"Item: I give to my grand-son, James Harrell, a negro boy named Allen, five years of age.

"Item: I give to my grand-son, Augustus George W. Hodges, a negro boy named Ephraim, about three years of age.

"Item: I give to Godfrey Kelly of Jefferson County, a negro fellow named Elijah, about twenty-five years old.

"Item: I give to Abel Hodges a negro fellow named Asa, about twenty years of age.

"Item: I give to Benjamin Alford's orphans, fifteen dollars.

"Item: I give to Cullen Harp and Joseph B. Avon, each, one dollar.

"Item: I give to Maria Thomas and her children, Henry Harrell, William Harrell, Nancy Thomas and Lucinda Thomas, and Andrew J. Harrell and John Harrell, the lot of land I live on, viz: lot No. 258, in the 10th district formerly Monroe, now Upson, containing two hundred two and a half acres, be the same more or less; all my horses, viz: five head; all my cows and calves, and yearlings; two yoke of oxen; all my sheep and hogs; also, all the corn, wheat, oats, and the crop that may be on hand at my death; also, all my household and kitchen furniture of every kind; all of which said property named in this item I wish to be divided into two equal parts, and one half I wish Maria Thomas and her said children named in this item to have, and the other half I wish said Andrew J. Harrell and John Harrell to have.

"Item: I give to Hardy H. Avon a negro girl, Matilda,

about thirteen years of age, which said girl I wish to remain under the control of James Harrell, as guardian for this property of the said Hardy H. Avon. I wish said James Harrell to hire said negro out yearly, into hands that will treat her well, until the said Hardy H. comes of age by law, and apply such portion of said hire to the purchase of necessaries for my daughter, Barbary Avon, as he may think proper in her situation; the balance, if any, to the said Hardy H. when he becomes of age.

"Item: I wish a boy Ellick, about eleven years old, to be sold, and the money arising from his sale to be divided between Maria Thomas and her children, named in the first item, Andrew J. Harrell and John Harrell, Godfrey Kelly and Abel Hodges, to be divided into four parts—one part to go to said Maria and her children, another to Andrew J. Harrell and John Harrell—another to Godfrey Kelly, and the other to Abel Hodges.

"Item: I wish my negro woman, Esther, to be sold; and after taking the expenses of executing this will out of it, and paying the cash herein given, I give the balance of the money to my grand-son, James W. Harrell.

"Item: I make James Harrell and Augustus George W. Hodges executors of this my last will and testament.

"In witness whereof I have hereto set my hand and seal, this first day of January, 1833."

The codicil was in the following words: "Georgia, Upson County: I, Barbary Harrell, of the county and State aforesaid, do make and ordain the following, as a codicil to my last will and testament, to which this is annexed:

"Item: It is my will that the future increase of the negro woman, Het, named in the first item of my said will, shall belong and go to Maria Thomas, my daughter and her children, Henry Harrell, William Harrell, Nancy Thomas and Lucinda Thomas; and that the future increase of the negro woman, Hulda, named in the second item of my said will, shall belong and go to Andrew J. Harrell and John Harrell."

This was dated the 6th of April, 1833.

'It was agreed in this Court, by the Counsel on the opposite sides of the case, that John Harrell proved that Barbary Harrell, the testatrix, died in October, 1836; and that she was then quite old, and had been infirm for some time previous to her death.

It seems that a "few months" before the death of the testatrix, the girl Matilda, bequeathed to Hardy H. Avon, had a child.

This child was the subject of the suit; and the question was, whether it passed with the mother to Hardy H. Avon, or remained a part of the estate of the testatrix, in respect to which she died intestate?

The charge of the Court was, that the child passed with the mother to Hardy H. Avon, and the complaint to this Court is this charge.

Was this charge right?

It seems to us to be apparent on the face of the will, that the testatrix intended, not to die intestate as to any property which she had or expected to have.

She bequeaths the land on which she lives; she bequeaths negroes, directing one to be sold, partly to raise a fund for paying the expenses of the administration of her estate; she bequeathes money; she bequeathes two yoke of oxen, all of her horses, all of her cows and calves and yearlings, all of her sheep, all of her hogs, all of her corn, wheat and oats—the crop that might be on hand at her death; she bequeahtes her household and kitchen furniture; she cuts off Cullen Harp and Joseph B. Avon with a dollar each, and the orphans of Benj. Alford with fifteen dollars; and within a few months after the time of making these bequests, which seem to have exhausted all the property which she then had, she, by a codicil, disposes of the "future issue" of the two child-bearing women, which, it is probable, was all the additional property she expected ever to have. Does it admit of a doubt, that the testatrix, by all this, did not intend to dispose of whatever she had in possession, and whatever she had in expectancy?

Assuming, then, that the testatrix intended to dispose of all the property she had and all that she expected ever to have, the question is, did she intend to dispose of the issue of Matilda?

It was insisted for the defendant in error, that she did; and to prove the position, it was argued that she had disposed of the issue of the child-bearing women, by making each woman's issue go with the mother to the donees of the mother; that in this, she must have been influenced by a sentiment of humanity towards these mothers and their offspring, and a sentiment of affection towards the donees of the mothers—those donees being her descendants; that for the other female, Matilda, and for her issue, the testatrix must have felt the same sentiment of humanity; and for the donee of Matilda, a grandson, the same sentiment of affection.; that, therefore, it must be inferred that she had as much intended the issue of Matilda to go with Matilda to that grand-son, as she had that the issue of the other two women should go with those women to those her other descendants.

In support of this argument, the Counsel for the defendant referred to several cases which had been decided in South Carolina, viz: (*Haynesworth vs. Cox, Harp Eq.* 116. *Gayle vs. Cunningham, Id.* 124. *Ellis vs. Shell,* 4 *Eq. R.*) And these cases are certainly in point, to show that in such a case as this, the issue goes with the mother.

[1.] Upon this argument and these authorities mainly, if not entirely, this Court came to the conclusion, that in this case, the issue of Matilda went with its mother to Hardy H. Avon; and therefore, the Court affirmed the decision of the Court below.

I concurred in that conclusion, but I am constrained to say that I now think the conclusion to have been a wrong one. After some reading and some reflection, I am compelled to admit, that I now think that the testatrix did not *intend* to dispose of the issue of Matilda.

The precise truth of the present case, I now take to be this: The testatrix, when she made her will, including the

Harrell, adm'r, &c. vs. Green.

·codicil, intended to dispose not only of all the property which
:she then owned, but also, of all which she thought she stood a
·chance afterwards to own.    Two of the slaves which she owned
were child-bearing women.    These two she thought might, be-
·fore her death, have issue.    Issue of these two, therefore, she
thought she stood a chance to own; and, therefore, of the
issue of these two she disposed.    Another of the slaves was a
female child only thirteen years of age.  ' The testatrix her-
self was old and infirm.    That, before her death, this child
might have a child, whereby she would become the owner of
other property than that included in her will, was an idea
that never once·entered her mind.    She no more thought of
acquiring other property, in this way, than she did of acquir-
ing other property, by a legacy or the bounty of some friend;
and therefore, she did not dispose of the issue of this child,
or ever think of doing so any more than she did of disposing
of property not to come to her except by such legacy or bounty.

If this be the truth of the case, as I now think it is, we
cannot make the issue of this child pass by the will, unless we
add words to the will.    But we are not at liberty to add words
to a will.

*Right d. Compton vs. Compton,* was a case " where a testa-
tor. devised to his son, Thomas Compton, (his heir at law,)
all his lands for life ; and he gave to his grand-son, Thomas
Compton, after the death of his father, all the north side of
his Down Farm, being about two hundred and fifty acres.
He gave to his grand-daughter, Frances, all the south part,
being about two hundred and forty acres.    He gave to his
grand-sons, George and Edmond and his grand-daughter, Eliza-
beth, the upper part of the Lain farm, being about two hundred
acres, equally between them, as long as they should remain
single, but if either of them should marry, *then to have paid
by the other two £10 a year, for his or her life:*    He gave to
Edward and John, and his grand-daughters, Mary and Ann,
all that lower part of the Lain farm, being about two hun-
dred and forty acres, equally between them, as long as they
. should live single ; but if either of them married, *then*

£10 *a year, for his or their life,* (but not said to be paid by the others.) The testator also gave unto his son's wife £5 a year, out of each of the said farms, if she should survive him. It was contended that the words " to have paid *by the other two,*" used in the clauses respecting the upper part of the Lain farm, (and which had the effect of enlarging the estate of the devisees of that farm to a fee) might be supplied in the devise of the lower farm, in which they were omitted; as there could be no plausible reason assigned for supposing that the testator meant to make a different disposition of one part of the same farm, to certain of his grandchildren, from that which he had made of another part of the same farm to others of his grand-children. But the Court decided that the devisees of the lower Lain farm, took an estate for life only. Lord *Ellenborough* said, "that the exposition of a will must be founded on the whole instrument, and made *ex antecedentibus et consequentibus* is one of the most prominent cannons of testamentary construction; yet, where between the parts there is no connection by grammatical construction, or by some reference, express or implied, and where there is nothing in the will declarative of some common purpose, from which it may be inferred that the testator meant a similar disposition, by such different parts, though he may have varied the phrase or expressed himself imperfectly, the Court cannot go into one part of a will to determine the meaning of another, *perfect in itself and without ambiguity,* and not militating with any other provision respecting the same subject-matter, notwithstanding that a more probable disposition for the testator to have made, may be collected from such assisted construction." And His Lordship subsequently said, that " from a testator having given persons in a certain degree of relationship, to him a *fee simple* in [part of] a certain farm, no conclusion which can be relied upon can be drawn, that his intention was to give to other persons, standing in the same rank of proximity, the same interest in another part of the same farm, where the words of the two devises are different. The more natural conclusion is, that as his ex-

pressions are varied, they were altered, because his intention in both cases was not the same. (1 *Jarm. on Wills*, 434.)

Several other cases are cited by *Jarman*, which are to the same effect.

These cases, in my .opinion, speak the law; and therefore, they, I think, rather than the S. Carolina cases, ought to be followed.

And this is saying that I think we have decided this case wrong. I certainly so think.